FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VOLKSWAGEN AG, AUDI AG, and VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A <br><br> Defendants. | Civil Action No.1:17-cv-970-AJT-IDD |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY**

Plaintiffs Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. (collectively "Volkswagen and Audi" or "Plaintiffs"), by counsel and pursuant to 15 U.S.C. §1116 and Fed. R. Civ. P. 65, submit this Memorandum of Law in Support of their *Ex Parte*[1] Motion for a Temporary Restraining Order, including a temporary asset restraint and expedited discovery (the "Motion").

**I.      INTRODUCTION AND SUMMARY OF ACTION**

Volkswagen and Audi are two of the most famous automobile companies and brands in the United States. And, while each own numerous valuable trademark assets, none of those marks symbolize the goodwill of the respective VOLKSWAGEN and AUDI brands more so than the famous and distinctive Volkswagen "VW" and "VW Stylized" marks and the AUDI and Audi "Four Rings" Design marks.

---

[1] *Ex Parte* relief is warranted in this case because otherwise Defendants will transfer all funds out of U.S.-based accounts upon receiving notice of this action.

Volkswagen and Audi spend millions of dollars per year promoting and maintaining their famous and distinctive brands in the United States. Much of these marketing and branding efforts originate at their U.S. headquarters located in this District (Herndon, Virginia), and a significant percentage of the over 500 employees located at the Virginia headquarters are directly connected to the marketing and branding efforts of Volkswagen and Audi. Based in part on these efforts, both Volkswagen and Audi have been tremendously successful in the United States, and have grown to be ubiquitous brands in the United States, and throughout the world.

As is the case with many successful brands, Volkswagen and Audi have become aware of a significant trademark infringement and counterfeiting problem in the United States and around the world.  To confront this growing challenge, Volkswagen and Audi have been forced to take action against numerous counterfeiters, many of whom hide behind false identities and online marketplaces.  As part of this enforcement effort, Volkswagen and Audi have filed a complaint against Defendants identified in Schedule "A" to the Complaint (collectively "the Defendants") for violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125.

Defendants are knowingly and intentionally promoting, advertising, marketing, retailing, offering for sale, distributing, and selling counterfeit products bearing the famous and distinctive Volkswagen and Audi trademarks within this judicial district and throughout the United States. Specifically, Defendants do so through the use of eBay auctions conducted with the user accounts and email addresses listed in Schedule A to the Verified Complaint (the "Defendant Auctions"), and one or more accounts with the online payment service PayPal. Through these unlawful actions, the Defendants have deceived, and continue to deceive, consumers into believing that they are purchasing genuine Volkswagen and Audi products when, in fact, they are receiving cheap knockoffs that are unauthorized and unlicensed.

Defendants run a sophisticated counterfeiting operation, and are doing business with Virginia residents by selling Volkswagen and Audi products through online marketplaces, such as eBay. *See* Compl. ¶¶23-35. The Defendant Auctions share unique identifiers, such as design elements, trade channels, similarities in price, similarities in the description of the goods offered, and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. *See* Compl. ¶¶24. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. *See id.* Plaintiffs are forced to file these actions to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing counterfeit Volkswagen and Audi products over the Internet. Defendants' ongoing unlawful activities should be restrained.

Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to Volkswagen and Audi by: (1) depriving Volkswagen and Audi of the value and goodwill associated with its Volkswagen and Audi trademarks; (2) defrauding the public into thinking that the products offered by Defendants through, among other channels, the Defendant Auctions, are genuine and authorized Volkswagen and Audi products when, in fact, they are counterfeit; and (3) depriving Volkswagen and Audi of their right to control the manner in which their marks are presented to the public. Immediate injunctive relief is necessary to preserve the status quo and prevent Defendants from transferring all funds from U.S.-based accounts upon receiving notice of this action.

## II.   STATEMENT OF FACTS

Volkswagen and Audi are both world-famous automobile manufacturers that sell Volkswagen and Audi automobiles, genuine parts, accessories, merchandise, and services through a network of licensed Volkswagen and Audi dealerships throughout the United States.

*See* Compl. ¶ 9. Volkswagen and Audi are owners of numerous federally-registered trademarks, collectively referred to herein as the "Volkswagen and Audi Marks." *See* Compl. ¶¶ 10, 16. True and Correct copies of the Volkswagen and Audi AUDI Marks are attached as Exhibits 1 & 2, respectively, to the Complaint.

Volkswagen and Audi incorporate the Volkswagen and Audi Marks into the design of their vehicles, vehicle parts, vehicle accessories, merchandise, and services. Volkswagen and Audi also extensively use the Volkswagen and Audi Marks in connection with the marketing of Volkswagen and Audi vehicles, accessories, parts, merchandise, and services. *See* Compl. ¶¶ 10, 12-14, 16, 18-20. These distinctive trademarks of Volkswagen and Audi symbolize each brand's marketability, reputation, and goodwill.

The Volkswagen and Audi Marks have been used exclusively and continuously by Volkswagen and Audi for decades, and have never been abandoned. *See* Compl. ¶¶ 11, 17. The above U.S. registrations of the Volkswagen and Audi Marks are valid, subsisting, in full force and effect, and the majority are incontestable pursuant to 15 U.S.C. § 1065. *See id.* The registrations for the Volkswagen and Audi Marks constitute *prima facie* evidence of their validity and of Volkswagen's and Audi's exclusive right to use the Volkswagen and Audi Marks in the U.S. pursuant to 15 U.S.C. § 1057(b). *See id.*

The success of the Volkswagen and Audi brands has resulted in significant counterfeiting of vehicle parts and accessories. *See* Compl. ¶¶ 25. Consequently, Plaintiffs have instituted a worldwide anti-counterfeiting program designed to regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* Despite Plaintiffs' enforcement efforts online and on the ground, Defendants have persisted in creating Internet auctions and other interactive websites that sell counterfeit Volkswagen and

Audi products that incorporate Plaintiffs' trademarks, despite the fact that Defendants are unauthorized and unlicensed to do so.  *See* Compl. ¶¶ 25-26.

Recently, Plaintiffs became aware of Defendants' online sales of Volkswagen and Audi wheel center caps, and strongly suspected such goods were counterfeit. Compl. ¶ 26. In July 2017, Plaintiffs' investigator purchased Volkswagen and Audi center caps from each of the Defendant Auctions. Through these purchases, Plaintiffs learned of each of the Defendants' email addresses and PayPal accounts. *Id.* Each of the Defendants shipped the center caps to this district. *Id.* Upon receipt of the center caps from each of the Defendants, Plaintiffs inspected the center caps and determined that they were counterfeit. *Id.* at ¶ 27.

After making the purchases, Plaintiffs attempted to identify Defendants, but despite their due diligence, Plaintiffs have been unable to reliably do so. Compl. ¶ 31.  However, Plaintiffs' well-pleaded allegations regarding selling tactics, similarities among the Defendant Auctions and the counterfeit Volkswagen and Audi products for sale thereon, and common tactics employed to evade enforcement efforts all establish a logical relationship among Defendants and suggest that Defendants are an interrelated group of counterfeiters. Compl. ¶¶ 31-33. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### III. THE COURT SHOULD FREEZE ACCOUNTS USED IN CONNECTION WITH THE DEFENDANTS COUNTERFEITING ACTIVITIES

Under Rule 65(b) of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order without written or oral notice to the opposing party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Here, each of the Defendants fraudulently promotes, advertises, offers to

5

sell, and sells counterfeit goods bearing the famous and distinctive Volkswagen and Audi Marks through use of the Defendant Auctions, and one or more PayPal accounts. The entry of a temporary restraining order is appropriate because it would immediately enjoin Defendants from benefiting from their wrongful use of the Volkswagen and Audi Marks and preserve the status quo until such time as a hearing can be held. *See In re Vuitton et Fils. S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing that *ex parte* temporary restraining orders are "indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief"); *Microsoft Corp. v. John Does 1-27*, No. l0-cv-00156-LMB-JFA [Dkt. No. 23] (E.D. Va. Feb. 22, 2010) (granting an *ex parte* TRO upon finding that the "Court's ability to grant effective final relief will result from the sale, transfer, or other disposition or concealment by Defendants of the domains at issue…if the Defendants receive advance notice of this action."); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 WL 6862341 at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief particularly compelling where counterfeiting activity "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

In the absence of a temporary restraining order without notice, Defendants will have not only a strong incentive, but the opportunity to move any assets away from U.S.-based financial institutions, including PayPal, to accounts outside the jurisdiction of this and other U.S. courts. Federal courts have recognized that, in circumstances such as these, providing notice "appears to serve only to render fruitless further prosecution of the action." *See Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *Time Warner Enter. Co. v. Doe*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing

merchandise are often rendered useless if notice is given to the infringers"). To prevent Defendants from circumventing any relief this Court may provide, the Court should grant Plaintiffs' *ex parte* motion for a temporary restraining order. Such relief has regularly been granted by this Court, as well as from other U.S. district courts around the country. *See, e.g.*, *Montblanc-Simplo GmbH v. The Internet Domain Names identified on Schedule A*, 17-cv-00415-lmb-tcb [ECF No. 15] (E.D.Va. April 14, 2017) (granting motion for ex part asset seizure order); *Otter Prods., LLC et al v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 17-cv-010141 [ECF No. 23] (N.D. Ill. Feb. 14, 2017) (same); *Chloe SAS et al. v. Sawabeh Information Services Co.*, 11cv04147 [ECF No. 32] (C.D. Cal. May 17, 2011) (same); *Richemont Int'l SA et al. v. replicawatchesman.com*, 16-cv-62612 [ECF No. 16] (S.D. Fla. Nov. 28, 2016) (same).

### A. Standard for Temporary Restraining Order

"The standard for granting either a TRO or a preliminary injunction is the same." *Velasquez v. Velasquez*, No. 1:14CV1688 JCC/TRJ, 2014 WL 7272934, at *3 (E.D. Va. Dec. 15, 2014); *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D.Va. 2006) (citations omitted). In deciding whether to grant a TRO or preliminary injunction, the Fourth Circuit follows the test established by the United States Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, whereby the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting 555 U.S. 7, 20 (2008)).

An analysis of this case under the *Winter* factors compels the Court to grant Plaintiffs' motion and: (1) order a temporary freeze on all PayPal accounts linked to the Defendants and therefore likely to be used in connection with the Defendants' counterfeiting; and (2) authorize

7

limited, expedited discovery allowing Volkswagen and Audi to identify each of the Defendants and inspect their financial account(s).

Plaintiffs are likely to succeed on the merits: they have established facts supporting their claims that: (a) Defendants have used Plaintiffs' Volkswagen and Audi Marks, without authorization, in connection with the sale, offering for sale, distribution, or advertising of counterfeit goods or services in a manner likely to cause confusion, or to cause mistake, or to deceive; (b) Defendants use Plaintiffs' Volkswagen and Audi Marks, without authorization, in a manner that has caused and is likely to continue to cause confusion, mistake, and/or deception among consumers and the public; and (c) Plaintiffs' Volkswagen and Audi Marks are famous and distinctive, and after the Marks became famous, Defendants used the Marks in commerce in a manner that is likely to cause dilution of the distinctive quality of the Marks.

If the *ex parte* Motion is not granted, Volkswagen and Audi will suffer irreparable harm. The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995); *Toolchex, Inc. v. Trainor*, 634F. Supp. 2d 586, 592 (E.D.Va. 2008) (granting a preliminary injunction based on the likelihood infringement will continue). Here, it is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, Defendants will expeditiously transfer all funds from their PayPal accounts, thereby disrupting the status quo and denying Volkswagen and Audi of a means to collect upon any judgment it is likely to obtain. Moreover, none of the Defendants will suffer any cognizable harm if the Court grants Plaintiffs' motion. As this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships. *See Toolchex, Inc.*, 634 F. Supp. 2d at 593.

The public interest also weighs heavily in favor of the Court granting a temporary restraining order. Through their actions, Defendants have deceived and continue to deceive consumers into believing that they are purchasing genuine Volkswagen and Audi products when, in fact, they are receiving unauthorized and unlicensed knockoffs, which is creating confusion among consumers. The public will benefit from deterring such activity and preserving the availability of judicial remedies.

B. **Volkswagen and Audi Will Likely Succeed on the Merits**

Volkswagen and Audi are likely to succeed on the merits of their claims for trademark counterfeiting and infringement, trademark dilution, and false designation of origin.

1. **Trademark Counterfeiting**

A party is liable for trademark counterfeiting where: (1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offer for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers. 15 U.S.C. § 1114(1); *Match.Com, LLC. v. Fiesta Catering Int'l Inc.*, No. 1:12cv363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

Defendants have intentionally used counterfeit versions of the Volkswagen and Audi Marks in commerce. Defendants have created the Defendant Auctions, which display

9

Volkswagen and Audi Marks, and promote and sell counterfeit Volkswagen and Audi products. Compl. ¶ 26. Plaintiffs' investigator purchased such counterfeit products from the Defendant Auctions, and through correspondence with Defendants, learned of the Paypal accounts being used by Defendants to sell counterfeit Volkswagen and Audi products. *Id*. Defendants then shipped the counterfeit products to this district.[2] *Id*. ¶ 27. Defendants have almost certainly shipped other counterfeit products to other customers, including customers in this district. *Id.* ¶ 23. Volkswagen and Audi examined such products upon receipt, and confirmed the counterfeit nature of such products. *Id.* ¶ 28. The foregoing acts establish Defendants' use of the counterfeit versions of the Volkswagen and Audi Marks in commerce.

There are at least two factors suggesting that Defendants know they are using counterfeit marks and selling counterfeit products. First, Defendants suggest that potential buyers measure their wheel caps to confirm that center caps will fit, despite claiming that the center caps fit Volkswagen and Audi vehicles—an unnecessary task if the center caps were genuine, and intended for certain car models. *Id*. ¶ 26. Second, Defendants marketed the goods bearing counterfeit versions of the Volkswagen and Audi Marks at very low prices when they would have known that genuine Volkswagen and Audi products sell for a premium price. *Id. ¶* 26; s*ee also U.S. v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (observing that where goods were priced below wholesale, the defendant should have known they were counterfeit); *Coach, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *8 (D.N.H. June 9, 2011) ("[A] reasonable person could have easily identified the counterfeit goods offered for sale at the Flea Market based on their dramatically low prices"). These facts indicate that Defendants know the products are counterfeit.

---

[2] Pictures of the counterfeit goods shipped by Defendants are found in Exhibits 7 and 8 to the Complaint.

As mentioned above, Defendants' use of the counterfeit versions of the Volkswagen and Audi Marks was in connection with the sale, offer for sale, or distribution of counterfeit goods.

Finally, Defendants' use of the counterfeit marks is likely to confuse consumers. Here, as explained above, there is no doubt the goods sold by Defendants are counterfeit. And where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Moreover, Defendants' goods bear VOLSKSWAGEN and AUDI Marks and the Defendant Auctions state that they fit VW and Audi original wheels rims." *Id.* ¶ 26. Moreover, the Counterfeit Volkswagen and Audi products include stampings on their backs that are intended to confuse consumers into thinking the counterfeit products are genuine. For example, the counterfeit goods are stamped with genuine Volkswagen and Audi part numbers and an indication that the part is "Made in Germany." *Id.* ¶ 26.

For the foregoing reasons, Volkswagen and Audi are likely to prevail on their claims for trademark counterfeiting.

### 2. Trademark Infringement

Like their trademark counterfeiting claim, Volkswagen and Audi are likely to prevail on their claim for trademark infringement. A party is liable for trademark infringement where: (1) the plaintiff has a valid and protectable trademark; and (2) the defendant's use of an imitation of that trademark is likely to confuse consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). To show that a mark is valid and protectable, a party must provide evidence that: (1) the mark has been used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research; (2) the party registered and owns the mark; and (3) the party is exclusively entitled to use the mark in commerce. 15 U.S.C. § 1114(1); *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593-94 (E.D.Va. 2008). As explained above, the

Volkswagen and Audi Marks are famous and/or distinctive throughout the United States and the world, the Volkswagen and Audi Marks are registered around the world, including on the Principal Trademark Register of the U.S. Patent and Trademark Office, and Plaintiffs' registered Volkswagen and Audi Marks have obtained incontestable status pursuant to 15 U.S.C. § 1065. *See* Compl. ¶¶ 10-11, 16-17. Plaintiffs' incontestable federal registrations for the Volkswagen and Audi Marks are conclusive evidence of the validity of the marks, of Volkswagen's and Audi's ownership of the marks, and of Volkswagen's and Audi's exclusive rights to use the marks in U.S. commerce. Thus, all that remains is to determine whether Defendants' use of an imitation of the Volkswagen and Audi Marks is likely to confuse consumers, which it is.

As explained above, where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). And as also discussed above, Defendants used, and continue to use, the Defendant Auctions to promote and sell counterfeit Volkswagen and Audi products. Defendants complete these sales by shipping counterfeit Volkswagen and Audi products. *See* Compl. ¶ 27. These actions are sufficient to create a presumption of consumer confusion and a likelihood that Volkswagen and Audi will succeed on their claim for trademark infringement.

### 3. Trademark Dilution

Finally, Volkswagen and Audi are also likely to prevail on their claim for trademark dilution. To prevail on their dilution claim, Volkswagen and Audi must show that (1) their marks are famous, (2) their marks are distinctive, (3) Defendants used the marks in commerce, (4) Defendants' use began after the marks became famous; and (5) Defendants' use is likely to cause dilution of the distinctive quality of the mark. *See* 15 U.S.C. § 1125(c)(1). The Volkswagen and Audi Marks are prototypical examples of the famous marks that Congress had in mind when it expanded federal trademark protection to encompass protection from dilution. *See, e.g.*,

12

*Volkswagen, AG v. Volkswagentalk*.com, 584 F. Supp.2d 879, 884 ("the Court finds that the VW Marks are indisputably famous and are distinctive of Plaintiffs' services in commerce") (E.D.Va. 2008); *Audi, AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006) (finding Audi's trademarks to be famous and distinctive); *Automotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064-65 (9th Cir. 2006) (recognizing both Volkswagen and Audi as "famous" car companies with "distinctive trademarks."). There can be no dispute that the Volkswagen and Audi Marks are the prototypical famous trademarks that are entitled to protection under the Federal Anti-Dilution Act. *See e.g.*, *Michael Caruso & Co., Inc., v. Estefan Enters.*, Inc., 994 F. Supp. 1454, 1463 (S.D. Fla. 1998) (concluding that Congress intended to protect from dilution marks that "rise to the level of 'Buick' or 'Kodak.'"), *aff'd* 166 F.3d 353 (11th Cir. 1998). Additionally, Defendants clearly made commercial use of the Volkswagen and Audi Marks after they became famous.

The final element is established as a matter of law when identical marks are used on similar goods. In that circumstance, dilution—the capacity of the famous marks to identify and distinguish the goods of the trademark holder—indisputably occurs. *See, e.g., Moseley v. V. Secret Catalogue*, 537 U.S. 418, 434 (2003) ("[D]irect evidence of dilution…will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical."). Courts have routinely applied the *Mosley* presumption in granting injunctive relief. *See Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006); *Ford v. Heritage Mgmt.*, 911 F. Supp. 2d 616, 629-630 (E.D. Tenn. 2012).

### 4. False Designation of Origin

Finally, Volkswagen and Audi are also likely to prevail on their claim for false designation of origin. As with trademark infringement and counterfeiting claims, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §

13

1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical—is there a "likelihood of confusion?" *Id.; see also Lone Star*, 43 F.3d at 930 ("In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers"). Therefore, because Volkswagen and Audi have established the merits of their trademark counterfeiting and infringement claims against Defendants, including the fact that consumers are likely to be confused, a likelihood of success is also shown as to Volkswagen's and Audi's claims for federal false designation of origin.

## C. <u>Without Ex Parte Relief Volkswagen and Audi Will Suffer Irreparable Harm</u>.

Volkswagen and Audi are likely to suffer irreparable harm if an order freezing the assets in Defendants' accounts is not granted. Although the identity of Defendants is unknown, they have the incentive and capacity to hide their assets upon learning that they are at risk, especially if Defendants do not reside in this country. Defendants have used multiple e-mail addresses and eBay user IDs to conduct their illegal counterfeiting operation, demonstrating their ability to evade the law. *See* Compl. ¶¶ 1, 23, 24 29-33; *see also* Compl., Schedule A. If Defendants learn of this action before their assets are frozen, they almost certainly will seek to transfer their assets from any accounts in the United States, depriving Volkswagen and Audi of its ability to obtain an accounting or to otherwise obtain relief under 15 U.S.C. § 1117.

Other courts have found that an asset freeze is justified under similar circumstances due to the likelihood that a counterfeiter will dissipate funds in accounts that are subject to the

jurisdiction of U.S. courts and thereby deprive the plaintiff of an adequate remedy. *See, e.g., Diane Von Furstenberg Studio v. Snyder*, No. 1:06-CV-1356, 2007 WL 2688184, at *1 (E.D. Va. Sept. 10, 2007) (discussing sealed order restraining transfer of assets); *Dama S.P.A. v. Does*, No. 15-CV-4528, 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015) (recognizing that "Plaintiff's concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief"); Order Granting Asset Freeze, *Magpul Industries Corp. v. John Doe 1-10*, No. 14-cv-1556 [Dkt. No. 22] (N.D. Cal. Apr. 15, 2014) ("[I]t is likely that Defendants will attempt to disperse their assets from PayPal to accounts beyond the jurisdiction of the United States, if they were to receive notice that those assets were at risk in this litigation."); *Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492, 2014 WL 12543818, at *4 (S.D.N.Y. May 29, 2014) (discussing entry of asset restraint under seal). For these same reasons, Volkswagen and Audi will suffer irreparable harm if Defendants' accounts are not frozen.

        **D.**     **The Balance of Equities Tips Overwhelmingly in Favor of Maintenance of the Status Quo By Freezing the Defendants.**

Defendants are an inter-related group of counterfeiters who have profited through the sale of counterfeit Volkswagen and Audi products that infringe upon Plaintiffs' Volkswagen and Audi Marks. Compl., ¶ 24. It is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, all of the Defendants will expeditiously transfer all funds from their PayPal accounts, thereby disrupting the status quo and denying Volkswagen and Audi of a means to collect upon any judgment they are likely to receive. Further, Defendants' interests may be protected by a reasonable bond that Volkswagen and Audi will post to protect Defendants from unfair injury.

### E. The Public Interest Weighs Heavily in Favor of Granting Preliminary Injunctive Relief.

The two aims of trademark law are to "protect the public from deceit" and to protect "investment from its misappropriation by pirates and cheats." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.l5 (1992) (Stevens, J. concurring) (citing S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946)); *see also AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976) (stating the purpose of a trademark is to protect the public from confusion about "the identity of the enterprise from which goods and services are obtained"). Thus, the public interest is served when the courts "prevent[] [both] consumers from being confused" and "trademarks from being used deceptively…" *Toolchex, Inc.*, 634 F. Supp. 2d at 594.

Where a registered trademark is infringed, the Lanham Act provides that the trademark holder shall be entitled to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). It follows that an order preserving the status quo and ensuring that the Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest.

### IV. VOLKSWAGEN AND AUDI IS ENTITLED TO LIMITED EXPEDITED DISCOVERY

The Court should permit Volkswagen and Audi to conduct expedited third-party discovery regarding each of the Defendants' identities and the location and value of each of the Defendants' financial accounts. Courts have "broad discretion" to supervise discovery. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). This latitude includes the ability to permit discovery to commence prior to a Rule 26(f) conference. *See* Fed. R. Civ. P.

26(d)(1) (allowing a party to conduct discovery without a Rule 26(f) conference if ordered by the court).

Under Rule 65(d)(2), this Court has the authority to bind not only each of the Defendants, but "those persons in active concert or participation with" them. *See* Fed. R. Civ. P. 65(d)(2). The relief provided under Rule 65(d)(2) extends to financial institutions conducting business with a defendant. *See Montblanc-Simplo GmbH v. The Internet Domain Names identified on Schedule A*, 17-cv-00415-lmb-tcb [ECF No. 15] (E.D.Va. April 14, 2017) (granting TRO directing PayPal to freeze all funds involving defendants' accounts); *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10-CV-1011, 2011 WL 2559806, at *2 (E.D.Va. June 27, 2011) (extending preliminary injunction preventing withdrawal or disposition of funds held in defendant's bank accounts); *Bottega Teneta SA v. 2013bagsale.com*, No. 13-cv-62456 (Dkt. No. 7) (S.D. Fla. Nov. 15, 2013) (granting TRO directing PayPal to freeze all funds involving defendants' accounts); *SEC v. Temme*, No. 4:11-CV-655, 2011 WL 13143509, at *2 (E.D. Tex. Oct. 14, 2011) (enjoining "any bank, trust company, broker-dealer, depository institution, entity, or individual holding accounts or assets for or on behalf of any of the [d]efendants" from disbursing the defendants' assets). The third-party payment processor PayPal has cooperated with identical requests from many other consumer companies in previous similar cases.

This Court has regularly permitted expedited discovery in the interest of justice in order to allow plaintiffs to identify John Doe defendants under Federal Rule of Civil Procedure 26(d)(1). *See Montblanc-Simplo GmbH*, 17-cv-00415 [ECF No. 15]; *Cell Film Holdings, LLC v. Does*, No. 3:16-CV-749, 2016 WL7494319, at *5 (E.D.Va. Dec. 30, 2016); *LHF Prods., Inc. v. Does*, No. 3:16-CV-748, 2016 WL 7422657, at *5 (E.D.Va. Dec. 22, 2016). The Fourth Circuit has not articulated a specific standard for analyzing motions requesting early discovery, but

courts in this circuit and around the country have applied a "reasonableness" test that asks whether the plaintiff has shown good cause for expedited discovery. *See, e.g., Chryso, Inc. v. Innovative Concrete Sols, of the Carolinas, LLC*, No. 5:15-CV-115, 2015 WL 12600175, at *3 (E.D.N.C. June 30, 2015) ("apply[ing] the reasonableness-based test when a party seeks to conduct discovery prior to the Rule 26(f) conference in order to prepare for a preliminary injunction hearing."); *Humphrey v. Sallie Mae, Inc.*, No. 3:10-CV-01505, 2010 WL 2522743, at *1 (D.S.C. June 17, 2010) ("When presented with a motion to commence discovery prior to the Rule 26(f) conference, courts generally apply a reasonableness or good-cause standard, taking into account the totality of the circumstances in which the motion is presented.").

Courts routinely find good cause to grant expedited discovery to enable plaintiffs to identify John Doe defendants in trademark and copyright infringement cases. *See e.g., Cell Film*, 2016 WL 7494319 at *5 (permitting plaintiff to subpoena ISPs before 26(f) conference to obtain Doe defendants' identifying information); *LHF Prods.*, 2016 WL 7422657 at *5 (same); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11-CV-345, 2011 WL 2634166, at *2 (E.D.Va. July 1, 2011) (same); *Assef v. Does 1-10*, No. 15-CV-01960, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015) (granting expedited discovery of Doe defendants' contact information and IP addresses). Such expedited discovery is necessary to permit plaintiffs to identify the proper defendant(s), protect their rights, and obtain relief. *See Hard Drive Prods.*, 2011 WL 2634166, at *2. Accordingly, Volkswagen and Audi request that the Court grant them permission to conduct limited expedited third-party discovery directed to PayPal for the purpose of seeking to identify the Defendants and the scope of each of the Defendants' activities giving rise to this action.

### V.   CONCLUSION

For the foregoing reasons, Volkswagen and Audi request that this Court issue a temporary restraining order freezing the assets of each of the Defendants' PayPal accounts,

permit expedited discovery to determine each of the Defendants' identities and the amount and location of the profits of each of the Defendants counterfeiting and infringement and the scope of the Defendants' activities, and grant such further relief as this Court deems proper.

Date: September 1, 2017

Respectfully submitted,

/s/ Daniel E. Yonan
Daniel E. Yonan (VSB No. 46019)
Monica Riva Talley (VSB No. 41840)
Michael D. Specht (VSB No. 42410)
Daniel S. Block (*pro hac pending*)
STERNE KESSLER GOLDSTEIN & FOX, PLLC
1100 New York Ave., N.W., Suite 800
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
dyonan@skgf.com
mtalley@skgf.com
mspecht@skgf.com
dblock@skgf.com

*Attorneys for Plaintiffs*
*Volkswagen AG, Audi AG, and*
*Volkswagen Group of America, Inc.*