# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| VOLKSWAGEN AG, AUDI AG, and VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SYED IQBAL, MARSHALL KING, DAVID SEAL, PETER SPERA, SAI WAI LAM, EHSAN SHAREEFF, JEFFREY CARWILE, SHARIQ SYED, SAID AWAD, JASON LI, RANDAL WEILAND, SAOOD ABBASI, KASHIF ISLAM, BEN SUIDMAN, DIMO KARABOYUKOV, and PEPPA LI, <br><br> Defendants. | ) ) ) ) ) ) ) ) Civil Action No. 1:17-cv-970-LMB-IDD ) ) ) ) ) ) ) ) ) ) ) ) |

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiffs Volkswagen AG, Volks wagen Group of Am erica, Inc., and Audi AG, (collectively "Plaintiffs" or "Volkswagen and Audi"), by counsel, allege as follows for their First Amended Verified Complaint against Defendants Syed Iqbal ("Iqbal"), Marshall King ("King"), David Seal ("Seal"), Peter Spera ("S pera"), Sai Wai Lam ("Lam"), Ehsan Shareeff ("Shareeff"), Jeffrey Carwile ("Carw ile"), Shariq Syed ("Syed "), Said Awad ("Awad"), Jason Li ("J. Li"), Randal Weiland (Weiland"), Saood Abbasi ("Abba si"), Kashif Islam ("Islam"), Ben Suidm an ("Suidman"), Dimo Karaboyukov ("Karaboyukov"), an d Peppa Li ("P. Li ") (collectively, "Defendants").

## NATURE OF THE SUIT

1.     Volkswagen and Audi file th is action to combat online counterfeiters who trade upon their world-renowned reputations by s elling unauthorized and unlicensed counterfeit products using counterfeit ve rsions of Volkswagen's and Audi's federally registered trademarks (the "Counterfeit Volkswagen and Audi Prod ucts"). Defendants create hundreds of e Bay auctions and design them to appear as selling genuine V olkswagen and Audi products, while instead selling Counterfeit V olkswagen and Audi Products t o unknowing consumers. Defendants then attempt to avoid liability by going to great l engths to conceal both their identities and the full scope and interworking of their co unterfeiting operation. Volkswagen and Audi are forced to file thi s action to combat Defendants' counterfeiting of t heir registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Volkswagen and Audi Products over the Internet. Volkswagen and A udi have been, and continue to be, i rreparably damaged through c onsumer confusion, dilution, and tarnishm ent of their valuable trademarks as a res ult of Defenda nts' willful actions a nd seek injunctive and monetary relief.

## JURISDICTION AND VENUE

2.     This Court has origin al subject matter jurisdiction over the claim s in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 28 U.S.C. §1121.

3.     Plaintiffs' claims against Defendants for counterfeiting, trad emark infringement, false designation of origin, and tradem ark dilution are based on D efendants' misuse of Volkswagen's and Audi's tradem arks to m arket and sell Counterfeit Volkswagen and Audi Products, Defendant's sale and shipm ent of such Counterfeit Volkswagen and Audi Products to

consumers in this District, and, on information and belief, Defendants' use of instrumentalities in the district to promote and sell Counterfeit Volkswagen and Audi Products including through use of online marketplaces, such as eBay.

4.    The Court has *in personam* jurisdiction over the Defendants because P laintiffs' claims against the Defendants for counterfeitin g, trademark infringement, false designation of origin, and trademark dilution are based on the Defe ndants' misuse of Plaintiffs' trademarks to market and sell C ounterfeit Volkswagen and Audi Products, Defenda nts' sale and shipm ent of such Counterfeit Volkswagen and Audi Products to consum ers in this district, and, on information and belief, Defendants' use of instrum entalities in the district to prom ote and sell Counterfeit Volkswagen and Audi Products.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court m ay properly exercise personal jurisdiction over De fendants since each of the Defendants directly targets business activities toward consum ers in the United States, including Virginia and this District, through at least the Onlin e Marketplace Accounts/Internet Stores identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are seeking to do business with this District's residents by operating one or more commercial, Defendant Internet Stores thr ough which Virginia residents can purchase products using counterfeit versions of Plaintiffs' tradem arks. Each of the Defendants has targeted sales from Virginia residents by operating online stores that offer shipping to the United Sta tes, including Virginia and this District, and accept paym ent in U.S. dollars. Plaintiffs confirm ed that Defendants ship their Counterfeit Volkswagen a nd Audi Products to this District via test purchases made by Plaintiff's investigators. On information and belief, Defendants have sold additional products beyond those purchased by Plaintiff's investigators bearing counterfeit

versions of Plaintiffs' federally registered tradem arks to res idents of Virginia. Each of the Defendants is committing tortious acts in Virginia, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Virginia.

6.      Joinder of the Defendants is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the sam e series of transactions and th e same questions of law are common to all of the Defendants.

## PARTIES

**Plaintiffs**

7.      Audi AG ("Audi") is a corporation orga nized under the laws of Germany with its principal place of business in Ingolstadt, Germany.

8.      Volkswagen AG ("Volkswagen") is a co rporation organized under the laws of Germany with its principal place of business in Wolfsburg, Germany.

9.      Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia.

10.      Under agreement with Audi AG and Volkswagen AG, Volkswagen Group of America, Inc. polices and enforces Audi AG's and Volkswagen AG's tradem arks in the United States.

11.      Volkswagen and Audi are both world-fa mous automobile manufactures that sell Volkswagen and Audi autom obiles, genuine pa rts, and accessories ("Volkswagen and Audi Products") through a network of licensed Volk swagen and Audi dealerships throughout the United States. The d istinctive trademarks of Volkswagen and Audi sym bolize each brand's marketability, reputation, and goo dwill. For exam ple, it was noted that the re is a "clos e

emotional bond between the Volkswagen brand, its customers and [Vol kswagen's] products."[1] Audi's products evoke a sim ilar emotional reaction among consumers. The m agazine Fast Company concluded that "Audi driv ers are the most attached and personally connected to their car brand."[2] And Interb rand, a glob al consulting firm, recently ranked both Volks wagen and Audi 38th and 40th[th] respectively on a list of the mo st recognizable global brands.[3] Volkswagen and Audi have achieved this level of rec ognition through their ph ilosophy of manufacturing competence, innovation, and quality.

Volkswagen

12.     Volkswagen incorporates a variety of dis tinctive trademarks in th e design of its vehicles, vehicle parts, and vehicle accesso ries. Volkswagen uses its tradem arks in connection with the marketing of VW vehicles, accessories, parts, and services. Volkswagen is the owner of numerous federally-registered trademarks for a utomobiles, parts, accessories, and a long list of related services and m erchandise, including th e following representative sample, collectively referred to as the "VW Trademarks":

---

[1] *See* Press Release, "New Volkswagen campaign puts the focus on people," https://www.volkswagen-media-services.com/en/detailpage/-/detail/New-Volkswagen-campaign-puts-the-focus-on-people/view/3154886/7a5bbec13158edd433c6630f5ac445da (2016)

[2] *See* Rae Ann Fera, "Audi Drivers Are More Attached To Their Car Than Anyone Else," https://www.fastcompany.com/3038819/audi-drivers-are-the-most-attached-to-their-cars-according-to-brand-dependence-index (2014)

[3] *See* Interbrand.com, http://interbrand.com/best-brands/best-global-brands/2016/ranking/ (last visited August 28, 2017)

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 0653695 | VW | October 29, 1957 | 44(E) | Automobiles and accessories for automobiles |
| 2100963 |  | September 30, 1997 | March 1, 1995 | Automobiles and structural parts therefor, namely, . . . hub caps. . . |
| 2818615 | VW | March 2, 2004 | 44(E) | Automobiles . . .wheel hubs . . . hub caps . . . |
| 2849974 |  | June 8, 2004 | 44(E) | Automobiles . . .wheel hubs . . .hub caps . . . hubs for vehicle wheels . . . |
| 2987620 |  | August 23, 2005 | 66A | Automobiles . . .. wheel hubs . . . hub cabs. . . hubs for vehicle wheels |
| 2992649 | VW | September 6, 2005 | 66A | Automobiles. . . structural and replacement parts |

13.     The VW Trademarks have been used exclusively and c ontinuously by Volkswagen for over 50 years, and have never been abandoned. The above U.S. registrations for the VW Trademarks are valid, s ubsisting, in full force and eff ect, and many are i ncontestable pursuant to 15 U.S.C. § 1065.  True and correct "sta tus" copies of these registrations, obtained from the Tradem ark Status Docum ent Retrieval (TSDR) database of the United States Patent and Trademark Office a re attached hereto as **Exhibit 1**. The registrations f or the VW Trademarks constitute *prima facie* evidence of their validity and of Volkswagen's exclusive right to use the VW Trademarks pursuant to 15 U.S.C. § 1057(b).

14.	Of the thousands of parts incorporated   in  Volkswagen vehicles, few parts have come  to sy mbolize  the brand  as much as V olkswagen's  distinctive  center  wheel  caps ("VW Center Caps"). An example of a genuine center cap for a Volkswagen JETTA is shown below[4]



15.	Nearly  every Volkswagen vehicle features a VW Cent       er  Cap prom inently displaying  the Volkswagen VW ® mark.  And the VW   Center  Caps play a pivotal role in the unique   design and branding of Volkswagen ve       hicles  because th ey  prominently  feature Volkswagen's world-renowned Volkswagen VW® m ark and are highly visible from the outside of the vehicle.

16.	Volkswagen  has spent hundreds of m      illions  of dollars and has expended significant  effort in advertisi ng,  promoting,  and developing its tradem   arks  and trade dress, including without limitation the distinctive a nd famous Volkswagen VW® m ark throughout the world.  As a result of such advertising and expe     nditures,  and significant sales of Volkswagen products  in the U.S. and worldwide, the VW   Trademarks  are world-famous,  and associated by the consuming public exclusively with Volkswagen.

---

[4] *See* https://parts.vw.com/p/Volkswagen_2016_Jetta/Alloy-Wheel-Center-Cap/63619833/3B7601171XRW.html (visited August 28, 2017)

17.     The VW Trademarks perform an important source-identifying function as applied to parts and accessories relating to automobiles, signifying to the purchaser that the products come from Volkswagen and are manufactured to Volkswagen's high-quality standards. Volkswagen has established considerable goodwill in its trademarks and trade dress; the goodwill associated with the VW Trademarks is of incalculable and inestimable value to Volkswagen.

Audi

18.     Audi similarly incorporates a variety of distinctive marks in the design of its vehicles, vehicle parts, and vehicle accessories. Audi uses its trademarks in connection with the marketing of Audi vehicles, accessories, parts, and services. Audi is the owner of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise, including the following representative sample, collectively referred to as the "Audi Trademarks":

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 0906525 |  | January 26, 1972 | June 1955 | Automobiles, wheel caps |
| 3007305 |  | October 18, 2005 | December 31, 1970 | Automobile wheels |
| 3201037 |  | January 23, 2007 | January 22, 1936 | Automobiles and structural parts therefor |
| 0708352 | AUDI | December 13, 1960 | 44(E) | Automobiles and structural parts thereof |

| Registration No. | Mark | Reg. Date | Date of First Use in Commerce | Relevant Goods/Services |
|---|---|---|---|---|
| 2083439 |  | July 29, 1997 | April 1995 | Automobiles and structural parts therefor |
| 4284786 |  | February 5, 2013 | 44(E) | Vehicles and their structural parts |

19.     The Audi Trademarks have been used exclusively and continuously by Audi for decades, and have never been abandoned. The above U.S. registrations for the Audi Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct status" copies of these registrations, obtained from the TSDR database of the United States Patent and Trademark Office for the above-listed Audi Trademarks are attached hereto as **Exhibit 2**. The registrations for the Audi Trademarks constitute *prima facie* evidence of their validity and of Audi's exclusive right to use the Audi Trademarks pursuant to 15 U.S.C. § 1057(b).

20.     Similar to Volkswagen vehicles, few parts have come to symbolize Audi's brand as much as Audi's distinctive center wheel caps ("Audi Center Caps"). An example of a genuine center cap for an Audi A4 is shown below:



21.     Nearly every Audi vehicle features an Audi Center Cap prom inently displaying the Audi Four Rings m ark. And the Audi Center Caps play a pivotal role in the unique design and branding of Audi vehicles because they pr ominently feature Audi's world-renowned Audi Four Rings mark and are highly visible from the outside of the vehicle.

22.     Like Volkswagen, Audi has also s pent hundreds of m illions of dollars and has expended significant effort in advertising, prom oting, and developing its trademarks and trade dress, including without limitation the distinctive and fam ous Audi Four Rings mark throughout the world. As a result of such advertising and ex penditures, and significant sales of Volkswagen products in the U.S. and worldwide, the Audi Tr ademarks are world-famous and associated by the consuming public exclusively with Audi.

23.     The Audi Tradem arks perform an im portant source-identifying function as applied to p arts and acc essories relating to auto mobiles, signifying to t he purchaser t hat the products come from Audi and are manufactured to Audi's high-quality standards. Audi has established considerable goodwill in its trademarks and trade dress; the goodwill associated with the Audi Trademarks is of i ncalculable and inestimable value to Audi.

24.    Herein after the term "Plaintiffs' Trademarks" shall refer to, collectively, the Audi Trademarks and the Volkswagen Trademarks.

**The Defendants**

25.    Defendants are individuals and business entities who conduct business throughout the United States, including within the State of Virginia and this Judicial District, through the operation of online marketplaces, such as eBay. Each Defendant targets the United States, including Virginia, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps to consumers within the United States, including the State of Virginia and this District.

26.    Defendant Iqbal is an individual who, on information and belief, resides at 4206 McMullen Place, Edmonton, Alberta T6 W1S6, Canada, and uses the email address aliju2003@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

27.    Defendant King is an individual who, on information and belief, resides at 415 Hobart Street, Eau Claire, Wisconsin 54703, and uses the email address king.wi1982@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

28.    Defendant Seal is an individual who, on information and belief, resides at 6640 Taylor Road, #B101, Punta Gorda, Florida 33950, and uses the email address smartlinks08@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

29.    Defendant Spera is an individual who, on information and belief, resides at 66 Luyster, Huntington Station, New York 11746, and uses the email address

peterspera1960@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

30.     Defendant Lam is an individual who, on in formation and belief, resides at 3 Lai On Lane, Sai Ying Pun, Hong Kong, and uses th e email address sales@deluxe-item.com, among others, to sell Counterfeit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

31.     Defendant Shareeff is an individual who, on information and belief, resides at 557 Jellett Way, Edmonton, Alberta T6L6P9, Canada, and uses the email address ehsanshareeff@hotmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

32.     Defendant Carwile is an individual w ho, on inform ation and belief, resides at 2034 Avery W ay, Castle Rock, Colora do 80109, and uses the email address Frasdorp@gmail.com, among others, to sell Counter feit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

33.     Defendant Syed is an individual who, on information and belief, resides at 1315 84 Street SW , Edmonton, Albe rta T6X 1M6, Canada, and uses the em ail address ssyed2@telus.net, among others, to sell Counte rfeit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

34.     Defendant Awad is an individual who, on information and belief, resides at 1021 Pepper Place, Watsonville, CA 95076, and uses the email address said730@icloud.com, among others, to sell Counterfeit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

35.     Defendant J. Li is an individual who, on information and belief, resides at 2070 63rd Street, Brooklyn, New York 11224, and uses the email address whiteluna228@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

36.     Defendant Weiland is an individual who, on information and belief, resides at 3940 68th Street SE, Caledonia, Michigan 49316, and uses the email address sales@rdwglobal.net, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

37.     Defendant Abbasi is an individual who, on information and belief, resides at 10731 - 25 Avenue NW, Edmonton, Alberta T6J 5L 1, Canada, and uses the email address autoparts.n.accessories@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

38.     Defendant Islam is an individual who, on information and belief, resides at 3537 79 Street NW, Edmonton, Alberta T6K 0G1, Canada, and uses the email address paylessparts123@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

39.     Defendant Suidman is an individual who, on information and belief, resides at 320 36th Avenue E, Seattle, Washington 98112, and uses the email address shorealius@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterfeit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

40.     Defendant Karaboyukov is an individual who, on information and belief, resides at 16 Cockeysville Road, Cockeysville, Maryland 21030, and uses the email address

vagtex.office@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

41. Defendant P. Li is an individual who, on information and belief, resides at 2054 Bay Ridge Avenue, Brooklyn, New York 11224, and uses the email address pepperho1029@gmail.com, among others, to sell Counterfeit VW Center Caps and Counterf eit Audi Center Caps, and who is, on information and belief, associated with the other Defendants.

42. On information and belief, D efendants are an i nterrelated group of counterfeiters working in activ e concert to k nowingly and willfully manufacture, import, distribute, offer for s ale, and sell products using counterfeit versions of the Plaintiffs ' Trademarks in the sam e transaction, occurrence, or series of trans actions or occurrenc es. Defendants each use similar or the same pictures and descriptions of the Counterfeit Volkswagen and Audi Products in their Online Marketplaces . On infor mation and belief, Defendants also source their Counterfeit Volkswagen and Audi Products from the sam e manufacturer or manufacturers.

**DEFENDANTS' UNLAWFUL CONDUCT**

43. Unfortunately, the success of the Volkswag en and Audi brands has resulted in significant counterfeiting of ve hicle parts an d accessories. Conseq uently, Plaintiffs have instituted a worldwide anti-counterfeiting program designed to regularly investigate suspicious websites and online marketplace listings identified in proactive In ternet sweeps and reported by consumers. Despite Plaintiffs' enforcem ent efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estim ated to receive tens of m illions of visits per year and to generate nearly $500

billion in global annual online sales. [5] According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2016 was over $1.38 billion.[6] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

44.    Recently, Plaintiffs became aware of Defendants' online sales of Volkswagen and Audi Products, and strongly suspected such goods were counterfeit. These goods were priced at substantially     lower prices        than genuine Volkswagen and Audi Products. The goods appeared to be stamped with genuine Volkswagen and Audi product numbers, stated they were intended to fit original Volkswagen and Audi wheel rims, and included an indication that the parts were "Made in Germany." So, in July 2017, Plaintiffs' investigator purchased Volkswagen and Audi Products from each of the Defendant Internet Stores to determine their authenticity, among other things. Copies of     the eBay listings of Defendants' Counterfeit Volkswagen and Audi Product    auctions are attached as    **Exhibits 3 & 4**. Through these purchases, Plaintiffs also learned of each of the Defendant's email addresses and PayPal accounts, which are listed in Schedule A to this Complaint.

45.    In July and August 2017, Defendants shipped the goods purchased by Plaintiffs' investigator in to this Judicial District. Copies of the mailing labels for each item are attached as

---

[5] *See* Alanna Petroff,"The Fakes Industry is worth $461 billion," CNN.com, http://money.cnn.com/2016/04/18/news/economy/fake-purses-shoes-economy-counterfeit-trade/index.html (2016)

[6] *See* Homeland Security, "Intellectual Property Rights Seizure Statistics: Fiscal Year 2016, https://www.cbp.gov/sites/default/files/assets/documents/2017-Jan/FY%2016%20IPR%20Stats%20FINAL%201.25.pdf (2017)

**Exhibits 5 and 6**. Photographs of Defendants' Counterfe it Volkswagen and Audi Products as received are shown in **Exhibits 7 and 8**.

     46.     Volkswagen Group of America, Inc. has inspected the goods sold by Defendants and has determ ined that they are counterfeit . Defendants' Counterfeit Volkswagen and Audi Products are nothing more than cheap, low quali ty imitations of V olkswagen's and Audi's genuine products. Further, on information and belief, these parts were not "Made in Germany" as their markings indicated, but instead in China.

     47.     Defendants facilitate their sales by designing the Defendant Internet Stores so that they appear to unknowing consum ers to be authorized online retaile rs, outlet stores, or wholesalers. Defendants further perpetuate the illusion of legitimacy by purpor ting to of fer "customer service" and using indicia of authenticit y and security that consum ers have come to associate with autho rized retailers, including th e Visa®, MasterCard®, and/or PayPal® logos. Plaintiffs have not licensed or authorized Defe ndants to use any of the Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Volkswagen and Audi Products.

     48.     Defendants also deceive unknowing consum ers by using P laintiffs' Trademarks without authorization within the c ontent, text, and/or m eta tags of their websites in order t o attract various search engines cr awling the Inte rnet looking for websites relevant to consum er searches for Volkswagen and Audi Products. On information and belief, Defendants show Plaintiffs' Trademarks in product im ages while us ing strategic item titles and descriptions that will trigger their listings when consumers are searching for Volkswagen and Audi Products.

     49.     Further, on inform ation and belief, De fendants have gone to great lengths to conceal their identities and often use multiple fictitious names, business names, and addresses to register and operate th eir network of Defendant Internet Stor es. On inform ation and belief,

Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Com plaint, as well as o ther unknown fictitious names and addresses. Such Defendant Internet Store registration pa tterns are on e of m any common tactics used by the Def endants to conceal their iden tities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

50.     In addition to operating under m ultiple fictitious names, Defendants in this cas e and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcem ent efforts. For exam ple, counterfeiters lik e Defendants will ofte n register new online marketp lace accounts und er new aliases once th ey receive notice of a lawsuit. Counterfeiters also typically ship prod ucts in sm all quantities via in ternational mail to minimize detection by U.S. Custom s and Border Protection. A 2012 U.S. Custom s and Bor der Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of s mall packages of counterfe it goods shipped through the m ail and express carriers.[7]

51.     Further, counterfeiters such as Def endants typically operate multiple credit card merchant accounts and PayPal acco unts behind layers of paym ent gateways so that they can continue operation in spite of Plaintiffs' en forcement efforts. On infor mation and belief, Defendants maintain off-shore bank accounts a nd regularly m ove funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

---

[7] *See* Homeland Security, "Intellectual Property Rights: Fiscal Year 2012 Seizure Statistics,"
https://www.cbp.gov/sites/default/files/documents/FY2012%20IPR%20Seizure%20Statistics_0.pdf. (2012)

52. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used an d continue to use Plai ntiffs' Trademarks in connectio n with the advertisement, distribution, offering for sale, a nd sale of Counterfeit Volkswagen and Audi Products into the United States and Virginia over the Internet. The Defendant Internet Stores offer shipping to the United States, including Virginia and, on inform ation and belief, each Defendant has sold Counterfeit Volkswagen and Audi Products into the United States, including Virginia and this District.

53. Defendants' use of Plaintiffs' Tradem arks in connection with the ad vertising, distribution, offering for sale, and sale of Counterfeit Volksw agen and Audi Products, including the sale of Counterfeit Volkswagen and Audi Products into the United States, including Virginia, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I - TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

54. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 35.

55. This is a tradem ark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the fe derally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are distinctive marks.

56. Defendants have sold, offered to sell, m arketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising pro ducts using counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

57.     Volkswagen AG is the exclusive owner of the VW Trademarks, and Audi is the exclusive owner of the Audi Trademarks. Plaintiffs' United States Registrations for their respective Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Volkswagen and Audi Products among the general public.

58.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of Plaintiffs' Trademarks.

60.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Volkswagen and Audi Products.

**COUNT II- FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

61.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

62.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Volkswagen and Audi Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Volkswagen and Audi Products by Plaintiffs.

63.     By using Plaintiffs' Trademarks on the Counterfeit Volkswagen and Audi Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Volkswagen and Audi Products.

64.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Volkswagen and Audi Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

65.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the associated goodwill of the Volkswagen and Audi brands.

## COUNT III- TRADEMARK DILUTION (15 U.S.C. § 1125(C))

66.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 47.

67.     Plaintiffs' Trademarks have become famous and distinctive worldwide through Plaintiffs' decades of continuous and exclusive use in connection with Plaintiffs' products and services.

68.     Because Plaintiffs' products and services have gained a reputation for superior quality, durability, and performance, Plaintiffs' Trademarks have gained substantial renown.

69.     Defendants have willfully and intentionally used and continue to use Plaintiffs' Marks in connection with the advertisement, promotion, and sale of Defendants' products.

70.     Defendants' use of Plaintiffs' Trademarks has caused, and continues to cause, irreparable injury to and actual dilution of the distinctive quality of Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(c). Defendants' wrongful use of Plaintiffs' Trademarks dilutes, blurs, tarnishes, and whittles away the distinctiveness of Plaintiffs' Trademarks.

71.     Defendants have used, and continue to use, Plaintiffs' Trademarks willfully and with the intent to dilute Plaintiffs' Trademarks, and with the intent to trade on Plaintiffs' reputation and the goodwill inherent in Plaintiffs' Trademarks.

72.     As a direct and proximate results of Defendants conduct, Plaintiffs have suffered irreparable harm to Plaintiffs' Trademarks.

73.     Unless Defendants are enjoined, Plaintiffs' Trademarks will continue to be irreparable harmed and diluted. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants actions are allowed to continue.

74.     Defendants have used and continue to use Plaintiffs' Trademarks, or counterfeits thereof, willfully, and with the intent to dilute Plaintiffs' Trademarks and trade on Plaintiffs' reputation and goodwill. Accordingly, this is an exceptional case within the meaning of 15. U.S. C. § 1111(a).

75.     As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of Plaintiffs' Trademarks pursuant to 15 U.S.C. §1117.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment against Defendants as follows:

A.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

advertising, offering for sale, or sale of any product that is not a genuine Volkswagen or Audi P roduct or is not au thorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Volkswagen or Audi Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for s ale under P laintiffs' Trademarks;

c. committing any acts ca lculated to c ause consumers to believe that De fendants' Counterfeit Volkswagen and Audi Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

e. manufacturing, shipping, de livering, holding f or sale, tr ansferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any m anner, products or inventory not m anufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sa le, and which bear any Volkswagen or Audi trademark, including the Plaintiffs' Tradem arks, or any reproduc tions, counterfeit copies or colorable imitations thereof;

B. Entry of an Order that, upon Plaintiffs' reque st, those in privity with Defendants and those with notice of the injunction, includi ng, without limitation, any online marketplace platforms such as eBay, Am azon, AliExpress, and Alibaba, web hosts, sponsored search engine or ad- word providers, credit cards, banks, merchant account providers, third party

processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Plaintiffs' Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiffs' Trademarks; and

C. That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

D. In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks;

E. That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

F. Award any and all other relief that this Court deems just and proper.

Date: September 25, 2017                    Respectfully submitted,

 /s/ Daniel E. Yonan               
Daniel E. Yonan (VSB No. 46019)
Monica Riva Talley (VSB No. 41840)
Michael D. Specht (VSB No. 42410)
Daniel S. Block (*pro hac pending*)
STERNE KESSLER GOLDSTEIN & FOX, PLLC
1100 New York Ave., N.W., Suite 800
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
dyonan@skgf.com
mtalley@skgf.com
mspecht@skgf.com
dblock@skgf.com

*Attorneys for Plaintiffs*
*Volkswagen AG, Audi AG, and*
*Volkswagen Group of America, Inc.*

# VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT

Dana A. Cizmadia, under penalty of perjury of the laws of the United States declares:

That she is employed by Volkswagen Group of America, Inc. as Brand Protection and Marketing Compliance Specialist; that she has read, is familiar with, and has personal knowledge of the contents of the foregoing First Amended Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within her personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that she is informed that the facts stated therein are true and correct.

Executed on September 22, 2017.

Dana A. Cizmadia
Brand Protection and Marketing Compliance Specialist
VOLKSWAGEN Group of America, Inc.