UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



VOLKSWAGEN AG, AUDI AG, and )
VOLKSWAGEN GROUP OF AMERICA, INC., )
)
    Plaintiff, )
)
v. ) Civil Action No. 17-cv-00970 (LMB/IDD)
)
SYED IQBAL, *et al.*, )
)
    Defendants. )
)

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs' Motion for Default Judgment against Defendants Syed Iqbal, Ehsan Shareeff, Shariq Syed, Said Awad, Saood Abbasi, and Kashif Islam (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 65.) After Defendants failed to appear at the hearing on March 16, 2018, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the First Amended Verified Complaint (the "Amended Complaint"), Plaintiffs' Motion for Default Judgment, and the supporting memorandum, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiffs' Motion be **GRANTED**.

### I. INTRODUCTION

Plaintiffs filed their Complaint on August 29, 2017, against unincorporated associations that are identified in Schedule A, which is attached to the Complaint. (Dkt. No. 66 at 8; *see also* Dkt. No. 1.) Plaintiffs allege that eBay internet stores were established to sell counterfeit

products bearing Plaintiffs' trademarks without authorization. (*Id.*) On September 25, 2017, Plaintiffs filed their Amended Complaint to add Defendants, who are associated with the various eBay internet stores. (Dkt. No. 66 at 8; *see also* Dkt. No. 21.) Plaintiffs seek relief pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1125(a)(1)(A), 1125(c). (Am. Compl. ¶¶ 58, 64, 70.) Specifically, Plaintiffs request that the Court award statutory damages in the amount of $4,000,000.00 and permanently enjoin Defendants from infringing or otherwise violating Plaintiffs' registered trademarks. (Am. Compl. at 21–23; Dkt. No. 66 at 15–17.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves federal questions arising under the Lanham Act, which is federal law relating to trademarks.

This Court also has personal jurisdiction over Defendants because Defendants established minimum contacts with the Commonwealth of Virginia. A federal court may exercise personal jurisdiction over a non-resident in the manner provided by the law of the state in which the court sits. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because Virginia's long-arm statute is interpreted to extend personal jurisdiction to the fullest extent permitted by due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citations omitted). To satisfy the requirements of due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, Defendants directed electronic activity into Virginia with the manifested intent of engaging business and that activity created the basis for this action. *See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Namely, Defendants offered to sell their counterfeit products to residents of Virginia and shipped their counterfeit products into Virginia. (Am. Compl. ¶¶ 43–53.) Therefore, the Court may exercise personal jurisdiction over the nonresident Defendants based on Defendants' internet contacts with this forum.

Similarly, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants' online sales were directed, in part, at residents of this District, and Defendants in fact shipped their counterfeit products into this District. (*Id.* ¶ 5.)

### B. Service of Process

Federal Rule of Civil Procedure 4(e) provides that an individual residing in the United States may be served by following state law in the state where service is made or by leaving a copy of the summons and complaint at the individual's dwelling with someone of suitable age and discretion. *See* Fed. R. Civ. P. 4(e)(1), (2)(B).

Rule 4(f) authorizes the Court to order service on an individual in a foreign country by means that are not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). However, the court-ordered method of service must be "'reasonably calculated' to give notice to defendant." *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005). Service of process through email generally satisfies constitutional due process. *See WhosHere, Inc. v. Orun*, No. 1:13-cv-00523-AJT-TRJ, 2014 WL 670817, at *3 (Feb. 20, 2014).

Defendant Said Awad is a resident of California. (Am. Compl. ¶ 34.) On October 8, 2017, Plaintiffs served Defendant Said Awad by leaving a copy of the summons and Amended Complaint at Awad's dwelling with a "co-occupant" of suitable age and discretion. (Dkt. No.

33.) Therefore, Plaintiffs effected service on Defendant Said Awad in accordance with Federal Rule of Civil Procedure 4(e)(2)(B).

Defendants Syed Iqbal, Ehsan Shareeff, Shariq Syed, Saood Abbasi, and Kashif Islam (collectively, the "Foreign Defendants") are residents of Canada. (Am. Compl. ¶¶ 26, 31–33, 37–38.) On November 16, 2017, Plaintiffs filed a Motion for Order Authorizing Service of Process by Email or, in the Alternative, by Publication. (Dkt. No. 34.) On November 21, 2017, the Court granted Plaintiffs' Motion. (Dkt. No. 42.) On November 22, 2017, Plaintiffs served the Foreign Defendants using the email addresses that the Foreign Defendants supplied to PayPal, Inc. ("PayPal") to register for their accounts. (*See* Dkt. Nos. 35 at 6, 43 ¶ 4.) Plaintiffs also published notice of this lawsuit in *The Washington Times* on November 24, 2017. (Dkt. No. 43 ¶ 5.) Accordingly, the undersigned finds that service of process has been accomplished in this action.

### C. Grounds for Default

Plaintiffs filed their Amended Complaint to add Defendants on September 25, 2017. (Dkt. No. 66 at 8; *see also* Dkt. No. 21.) Defendants failed to appear, answer, or file any responsive pleading in this matter. On February 6, 2018, Plaintiffs filed with the Clerk's Office a request for Entry of Default. (Dkt. No. 62.) The Clerk entered default against Defendants on February 9, 2018. (Dkt. No. 64.) On February 14, 2018, Plaintiffs filed a Motion for Default Judgment and Memorandum in Support, for which the Court held a hearing on March 16, 2018. (Dkt. Nos. 65, 66, 72.) When Defendants failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

### II. <u>FINDINGS OF FACT</u>

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that

4

Plaintiffs established the following facts.

### A. Plaintiffs' Marks

Plaintiffs Audi AG ("Audi") and Volkswagen AG ("Volkswagen") are German corporations. (Am. Compl. ¶¶ 7, 8.) Plaintiff Volkswagen Group of America, Inc. ("Volkswagen America") is a New Jersey corporation with its principal place of business in Virginia. (*Id.* ¶ 9.) By agreement, Volkswagen America polices and enforces Audi and Volkswagen's trademark rights in the United States. (*Id.* ¶ 10.) Audi and Volkswagen maintain distinctive marks that symbolize their brand's marketability, reputation, and goodwill. (*Id.* ¶ 11.) Plaintiffs included in their Amended Complaint depictions of some of their distinctive marks that have been registered for decades. (*Id.* ¶¶ 12, 14, 18, 20.) Audi and Volkswagen have invested millions of dollars to create, advertise, and promote the distinctive trademarks and have used their distinctive marks on products for more than 50 years. (*Id.* ¶¶ 13, 18, 19, 22; *see also* Dkt. No. 66 at 13.) Thus, Plaintiffs' registered marks are widely recognizable as Plaintiffs' brand. (*See id.* ¶ 17, 23.)

### B. Defendants' Counterfeiting Activity

Defendants are individuals who are members of an "interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the Plaintiffs' [t]rademarks in the same transaction, occurrence, or series of transactions or occurrences." (Am. Compl. ¶ 42.) Specifically, Defendants established eBay internet stores to sell counterfeit products bearing Plaintiffs' trademarks without authorization. (*Id.* ¶¶ 5, 43.) Defendants priced their products at "substantially lower prices than genuine Volkswagen and Audi [p]roducts." (*Id.* ¶ 44.) Defendants' products are "low quality imitations" of Plaintiffs' products. (*Id.* ¶ 46.) However, Defendants created an illusion that they were authorized retailers and in doing so have deceived

5

unknowing consumers, caused confusion, and irreparably harmed Plaintiffs. (*Id.* ¶¶ 47, 48, 53.)

### III. **EVALUATION OF PLAINTIFF'S COMPLAINT**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

## A. Count I – Trademark Infringement & Counterfeiting

Plaintiffs allege a claim of trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1). The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or deceive. 15 U.S.C. § 1114(1). Additionally, the Lanham Act prohibits the use of a counterfeit registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or deceive. 15 U.S.C. § 1114(1). A counterfeit mark is defined as "a spurious mark [that] is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

To establish a trademark infringement claim, a plaintiff must demonstrate that (1) it owns a valid trademark; (2) the trademark is protectable; and (3) the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). The Fourth Circuit has posited nine non-exhaustive factors to determine the likelihood of confusion. *See generally George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Notably, the plaintiff enjoys a presumption of a likelihood of confusion when the infringing mark is nearly an exact imitation in an attempt to capitalize on the popularity of plaintiff's trademark. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Similarly, a trademark counterfeiting claim requires a plaintiff to establish that "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers." *Assoc. Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3

(E.D. Va. Mar. 19, 2013).

Here, Plaintiffs sufficiently pleaded their first count. The first and second elements of the trademark infringement claim are satisfied because Volkswagen and Audi own valid, protectable trademarks as the marks were registered, and Plaintiffs have spent millions of dollars in advertising and promoting their marks. The third element is satisfied because Defendants used colorable imitations of Plaintiffs' marks, and that use is likely to cause confusion among consumers, which also satisfies the fourth element of the counterfeit claim. Indeed, Defendants stamped their merchandise with what appeared to be genuine Audi and Volkswagen product numbers and advertised that the goods were intended to fit original Volkswagen and Audi products. (Am. Compl. ¶ 44.) Defendants went as far as indicating their merchandise was made in Germany when in fact the merchandise was made in China. (Am. Compl. ¶¶ 44, 46.) This use also shows that Defendants knew the items were counterfeit, satisfying the second element of the counterfeit claim. Finally, Defendants are offering for sale and have sold the counterfeit items through eBay internet stores, which satisfies the first and third elements of the counterfeit claim. Accordingly, the undersigned finds that Plaintiffs are entitled to relief on Count I of the Amended Complaint.

### B. Count II – False Designation of Origin

Plaintiffs allege that Defendants misrepresented the origin of the counterfeit products in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). A party is liable for false designation of origin if the use of the mark is "likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). As discussed above, Defendants' use of Plaintiffs' marks is likely to cause confusion because of the similarity between the counterfeit products and

Plaintiffs' trademark. Thus, consumers are likely to believe that Defendants' counterfeit products are sponsored or approved by Plaintiffs. Therefore, the undersigned finds that Plaintiffs alleged well-pleaded facts to support their second count.

### C. Count III – Trademark Dilution

Finally, Plaintiffs allege that Defendants' use of Plaintiffs' trademarks dilutes and tarnishes Plaintiffs' marks in violation of 15 U.S.C. § 1125(c). To establish a claim for trademark dilution, Plaintiffs must show that the similarity between Plaintiffs' trademarks and Defendants' marks "harms the reputation" of Plaintiffs' marks. 15 U.S.C. § 1125(c)(2)(C). As explained above, Defendants use identical replicas of Plaintiffs' marks to sell the counterfeit products. However, Defendants' counterfeit products are lower quality than Plaintiffs' genuine products. (Am. Compl. ¶ 46.) Thus, Defendants caused, and continue to cause, irreparable injury to and actual dilution of the distinctive quality of Plaintiffs' trademarks. Accordingly, the undersigned finds that Plaintiffs state a claim for trademark dilution.

### IV. **REQUESTED RELIEF**

Plaintiffs seek a permanent injunction against Defendants and third-parties acting in concert with Defendants; statutory damages in the amount of $2,000,000.00 per counterfeit mark; and pre- and post-judgment interest on any damages awarded.[1] (Dkt. No. 66 at 15–17.) Plaintiffs also request the transfer of all assets in the Defendants' PayPal accounts; however, Plaintiffs did not provide any legal basis for such transfer. (*See* Dkt. No. 66 at 17.) Instead, Plaintiffs appear to elect statutory damages in lieu of seeking Defendants' profits realized from using the counterfeit marks. (*See* Dkt. No. 66 at 15–16); *see also* 15 U.S.C. § 1117(c)

---

[1] Although Plaintiffs did not include a request for interest in the Amended Complaint, "interest need not be specified in the complaint," and thus, the Court may grant Plaintiffs' request for interest. *Acosta v. Lopez*, No. 1:17-cv-330 (LMB/IDD), 2017 WL 6541463, at *4 (E.D. Va. Dec. 21, 2017).

("[P]laintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages").

## A. Statutory Damages

In a case involving a defendant's use of counterfeit mark, the trademark owner may elect to recover an award of statutory damages. *See* 15 U.S.C. § 1117(c). When the defendant's use of the counterfeit mark is willful, statutory damages may be awarded up to, but may not exceed, the amount of $2,000,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(2). To determine the appropriate amount of statutory damages, the Court "must take into account the need to deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet." This Court has awarded maximum statutory damages for use of counterfeit marks when a defendant's use was "sufficiently broad, extensive, blatant, and willful." *Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, No. Civ. A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998).

Here, Plaintiffs are entitled to statutory damages because Defendants willfully used counterfeit Audi and Volkswagen marks. First, Defendants used marks that were essentially indistinguishable from Plaintiffs' own trademarks. Second, Defendants willfully used counterfeit marks as their actions were done in bad faith to gain profit at the expense of Plaintiffs' reputation. This determination of willfulness is further supported by the fact that Defendants replicated and displayed counterfeit Audi and Volkswagen marks to promote and sell the counterfeit products through their eBay internet stores. Additionally, Defendants' counterfeit use has been broad, extensive, blatant, and in furtherance of a coordinated effort to imitate Plaintiffs' products. Therefore, the undersigned recommends granting Plaintiffs' requested statutory

damages of $2,000,000.00 for the Volkswagen counterfeit mark and $2,000,000.00 for the Audi counterfeit mark for a total of $4,000,000.00 in statutory damages.

### B. Pre- and Post-Judgment Interest

Plaintiffs seek pre- and post-judgment interest on the above damages award. Plaintiffs are entitled to recover pre-judgment interest for their statutory damages under the Lanham Act. *Cf. Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 663, 665 (E.D. Va. 2011) (collecting cases awarding pre-judgment interest to copyright owners for infringement).

The undersigned finds that awarding Plaintiffs pre-judgment interest is appropriate to ensure that Plaintiffs receive the proper value of their statutory damages. *See City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194 (1995). In the absence of a request by a plaintiff for a particular interest rate, this Court has previously applied the Commonwealth of Virginia's standard judgment interest rate. *See, e.g., Tattoo Art*, 794 F. Supp. 2d at 663. The undersigned finds that the standard interest rate of 6% should be applied here and should be calculated from July 1, 2017, the earliest alleged date of infringement. (*See* Am. Compl. ¶ 44.)

Plaintiffs are also entitled to recover post-judgment interest pursuant to 28 U.S.C. § 1961(a). Post-judgment interest is appropriate here to ensure that Plaintiffs receive the proper value of the damages awarded against Defendants, regardless as to when Plaintiffs may be able to collect such damages.

### C. Permanent Injunctive Relief

Plaintiffs request that Defendants and third-parties acting in concert with Defendants be permanently enjoined from violating Plaintiffs' trademark rights. Plaintiffs further request that the temporary relief granted in this Court's September 5, 2017 Order (Dkt. No. 12) be made permanent. In the September 5, 2017 Order, this Court directed PayPal to (1) immediately freeze

all PayPal accounts associated with Defendants and (2) restrain and enjoin from transfer any monies held in such accounts until further ordered by this Court.

The Lanham Act provides that a court may grant an injunction to prevent trademark infringement. 15 U.S.C. § 1116(a). To obtain a permanent injunction, a plaintiff must show

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, Plaintiffs satisfy all four elements. First, Plaintiffs continue to suffer an irreparable injury as Defendants are continuing to infringe on Plaintiffs' trademarks causing a likelihood of confusion among consumers. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 42 F.3d 922, 938 (4th Cir. 1995) ("[F]inding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears."). Second, statutory damages are inadequate to compensate Plaintiffs because Defendants' lack of response despite Plaintiffs' repeated attempts to communicate with Defendants demonstrates a threat of continued infringement and counterfeiting. Thus, it is necessary to enjoin third-parties who have engaged with Defendants from facilitating access to accounts and services that Defendants have unlawfully used to infringe and counterfeit. Third, the only hardship that would befall Defendants by granting Plaintiffs' requested permanent injunction would be the requirement to follow clearly established trademark law. Therefore, the balance of hardships weighs in Plaintiffs' favor. Fourth, and finally, public interest favors an injunction because it would prevent the public from being confused by Defendants' counterfeit marks. Accordingly, Plaintiffs'

requested injunctive relief should be granted. Specifically, PayPal should be ordered to freeze all accounts associated with Defendants and restrain and enjoin from transfer any monies held in such accounts unless transfer to Plaintiffs is necessary to satisfy the judgment in this matter.

## V. **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiffs against Defendants for trademark infringement, counterfeiting, false designation of origin, and trademark dilution. The undersigned further recommends that an Order be entered awarding Plaintiffs $4,000,000.00 in statutory damages and permanently enjoining Defendants from infringing Plaintiffs' trademark rights. Additionally, the temporary relief granted in this Court's September 5, 2017 Order (Dkt. No. 12) should be made permanent.

## VI. NOTICE

By mailing copies of this Report and Recommendation, the Court notifies the parties as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to the following postal and email addresses associated with Defendants:

Said Awad
OEM Auto Parts
1021 Pepper Place
Watsonville, CA 95076

Saood Abbasi
Autoparts.n.accessories@gmail.com

Shariq Syed
Ssyed2@telus.net

Syed Iqbal
Aliju2003@gmail.com

Ehsan Shareef
ehsanshareeff@hotmail.com

Kashif Islam
Paylesspartes123@gmail.com

/s/
Ivan D. Davis
United States Magistrate Judge

April 19, 2018
Alexandria, Virginia